UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HOWARD AVENUE STATION, LLC;
THOMAS ORTIZ,

      Appellants,

v.                                        Case Nos: 8:19-cv-2491-WFJ[1]
                                                      8:12-bk-8821-CPM

FRANK KANE,

      Appellee.
_____/

## ORDER

This appeal arises from a bankruptcy case, *In re: Howard Avenue Station, LLC*, Case No. 8:12-bk-8821-CPM. Appellants Howard Avenue Station, LLC and Thomas Ortiz appeal two bankruptcy court orders: (1) an "Order Granting Emergency Motion to Abate the Payment of Adequate Protection to Frank R. Kane" entered on July 12, 2019; and (2) an "Order Denying Thomas Ortiz's Motion for Rehearing or Modification of Order Granting Emergency Motion to Abate Adequate Protection Payments to Frank R. Kane" entered on August 28, 2019 ("the Orders"). The Orders are attached here in the Appendix. After oral

---

[1] Consolidated with Case No. 8:19-cv-2490-WFJ and Case No. 8:19-cv-2492-WFJ.

arguments and careful review of the record, the Court grants Appellants relief by sustaining the Orders in part but "blue penciling" them as set forth below.

## BACKGROUND

This is a complex bankruptcy, so the Court has simplified these facts for present purposes.[2] Appellants are lessors of a building primarily used as a restaurant on Howard Avenue in Tampa, Florida. Dkt. 21 at 1. The parties entered the commercial lease in 2009. *Id.* Appellant Thomas Ortiz signed the lease and is an interested party. *Id.* Appellant Howard Avenue Station, LLC is the Chapter 11 debtor. *Id.* Appellee Frank Kane is the landlord of the building. *Id.* Pertinent to this triple net lease is the clear duty of the landlord to ensure a watertight roof on the premises.[3]

Appellant-Debtor Howard Avenue Station filed the Chapter 11 petition in 2012. *Id.* at 2. Landlord Kane filed a motion for adequate protection soon after, seeking, *inter alia,* rent payments as landlord during the bankruptcy. *Id.* The Bankruptcy court granted this motion, with monthly rent due in accordance with the lease: $21,400 monthly. Dkt. 21-9.

---

[2] The designated record is at Case No. 8:19-cv-2490-WFJ. All docket citations in this opinion are to Case No. 8:19-cv-2490-WFJ unless otherwise noted.

[3] The lease may be found in the record at Dkt. 21-34 at 6. Paragraph 9 of the lease requires the landlord to "maintain the existing exterior walls and roof system." Paragraph 19 entitles lessees to "quiet enjoyment" of the premises. Paragraph 3 states the rent shall be paid monthly "without deduction or offset." No lease provision exists for a landlord's failure to provide a habitable leasehold or quiet enjoyment during the lease term.

Appellant-Debtor Howard Avenue Station then sought to assume the lease under the Bankruptcy Code, 11 U.S.C. §365(a). Dkt. 41-237. Landlord Kane objected, and the issue has remained pending. The parties have been litigating in state court and bankruptcy court ever since, with several lawsuits and adversary proceedings.

Among the various proceedings, the parties attended a bankruptcy hearing in April 2018 concerning Landlord Kane's Motion for Relief from Stay. Dkt. 21-30. At that hearing, Appellant Ortiz stated to the Bankruptcy Judge that Landlord Kane breached his obligation to maintain a sound roof. *Id.* at 21–23. Counsel for Landlord Kane stated in response: "It sounds like somebody should send me a letter about it." *Id.* at 23. The Bankruptcy Judge responded: "You don't need a letter. Now we're telling you. You're on notice. Please tell Mr. Kane." *Id.* There were a series of additional hearings stretching into 2020 at which the failing roof was discussed. Dkts. 21-31; 21-32; 21-33; 21-35 (declaration of Ortiz); 42-337.

During a hearing on January 4, 2019, the Bankruptcy Judge at first directed counsel to inform the health department about the faulty roof, but then stated that Landlord Kane should be given a chance to fix the roof without involvement from the authorities. Dkt. 21-31 at 30, 38. The Court stressed: "The roof needs to be fixed." *Id.* at 31. The Court likened Landlord Kane to Nero fiddling while Rome burned. *Id.* at 37.

3

At another hearing in January 2019, Landlord Kane's lawyer stated that Kane expects to have the entire roof replaced "within 45-ish days." Dkt. 21-32 at 6. The Court noted the roof repair "was of dire concern to me [in April 2018] . . . It has to go fast." *Id.*

At a hearing on February 13, 2019, Landlord Kane's counsel stated: "We expect construction to start within the next two weeks." Dkt. 42-337 at 34. The Court expressed concern about black mold in the building. *Id.* at 34. At a hearing later that day, the Court inquired about roof repair. Dkt. 21-33. Ortiz stated no one had shown up to address the roof and someone had partly fallen through it. *Id.* at 26. The Court stated, "I don't want the danger of anybody in that building—I mean I don't want anyone to be in danger . . . Is there adequate insurance in case someone, you know, falls through and dies?" *Id.* at 27. The Court implored Landlord's counsel to attend to the roof matter. *Id.* Counsel stated, "I'll follow up on it today." *Id.*

On May 7, 2019, code inspectors from the City of Tampa shut down the second floor of the building as unsafe. Dkt. 21-34 at 2. The inspectors "red-tagged" the entire building, closing it as unsafe until structural repairs were made. *Id.* at 2–3. The City issued notices of violations and orders to vacate. *Id.* At that point, occupancy of the leasehold was illegal and barred for life safety reasons. The property has not been habitable since May 2019, although the Landlord told this

4

Court at a recent hearing that for a short time frame in 2020 the property might have been habitable.[4] The property has not been fit for occupation by the Debtor restaurant since it was "red-tagged" in May 2019, and counsel for Landlord Kane conceded at the recent hearing that "[t]here was no benefit to the debtor's estate during the time the property was closed."[5]

The Appellant-Tenants were ousted on May 7, 2019, by the City's condemnation. They then took two steps on May 10, 2019. First, they served upon the Landlord notice under Fla. Stat. § 83.201, stating their intention to withhold rent under that statute until the tenancy was rendered habitable. Dkt. 21-34. That provision, which the Court hereafter refers to as "the Florida statute," states:

> **Notice to landlord of failure to maintain or repair, rendering premises wholly untenable; right to withhold rent.**
>
> When the lease is silent on the procedure to be followed to effect repair or maintenance and the payment of rent relating thereto, yet affirmatively and expressly places the obligation for same upon the landlord, and the landlord has failed or refused to do so, rendering the leased premises wholly untenantable, the tenant may withhold rent after notice to the landlord. The tenant shall serve the landlord, in the manner prescribed by § 83.20(3), with a written notice declaring the premises to be wholly untenantable, giving the landlord at least 20 days to make the specifically described repair or maintenance, and stating that the tenant will withhold the rent for the next rental period and thereafter until the repair or maintenance has been performed. The lease may provide for a longer period of time for repair or maintenance. Once the landlord has completed the repair or maintenance, the tenant shall pay

---

[4] *See* Case No. 8:19-cv-2491-WFJ, Transcript from Hearing on November 18, 2021, p. 4.
[5] *See* Case No. 8:19-cv-2491-WFJ, Transcript from Hearing on November 18, 2021, p. 5.

the landlord the amounts of rent withheld. If the landlord does not complete the repair or maintenance in the allotted time, the parties may extend the time by written agreement or the tenant may abandon the premises, retain the amounts of rent withheld, terminate the lease, and avoid any liability for future rent or charges under the lease. This section is cumulative to other existing remedies, and this section does not prevent any tenant from exercising his or her other remedies.

Fla. Stat. § 83.201.

In addition to the self-help remedy provided by the statute, Appellants filed emergency motions with the bankruptcy court to abate rent payments to Landlord Kane. Dkt. 21-34; Dkt. 21-35. The Court held a hearing on May 16, 2019. Dkt. 21-39. The Court abated the rent pursuant to the Florida statute in the first of the appealed Orders that are here in the Appendix. Dkt. 21-39 at 21.

The Court and the parties discussed these issues at a hearing on May 16, 2019. Dkt. 21-39. Counsel for the Landlord stated that corrective construction was under city permit and should start next week. *Id.* at 22 ("[W]e will be entering constantly . . . in the building to do repairs over the next few weeks."). The Court and parties generally anticipated, with Ortiz expressing severe doubt, that the repairs would likely be completed by May 28, 2019. *See id.* at 9, 10, 17, 18, 20 (Landlord's attorney suggesting repairs might be completed by May 28 with Debtor's counsel discussing that date). Concerning the Landlord's repairs, the Court stated: "He's going to fix it. It's too bad it got to this point." *Id.* at 15. Ortiz noted, "They're saying it's going to happen on the 28th. I don't believe it's going

6

to happen." *Id.* at 18. Ortiz stated that thirteen months prior he had told the bankruptcy judge the Landlord was not going to fix the roof. *Id.* at 20. The Court concurred that Ortiz made this statement. *Id.* at 20; *see also* Dkt. 21-30 at 21-23. The transcript of this hearing makes clear that all involved, except Ortiz, reasonably expected the Landlord would make prompt repairs to render the premises habitable. This expectation was created by the Landlord. But prompt repairs never happened.

The Appellants sought rehearing from the Order issued after the hearing on May 16, 2019. Dkt. 21-46. The Order from the May 16, 2019, hearing and an Order denying rehearing are the subject of this appeal. *See* Appendix. Appellants object to the language that would require them, under the Florida statute, to pay about 30 months of back rent to the Landlord (for the months the premises was uninhabitable) prior to reentering the repaired premises.

## LEGAL STANDARDS

This Court has jurisdiction to review final bankruptcy court orders. *See* 28 U.S.C. § 158 (a)(1). Additionally, this Court has supervisory jurisdiction over bankruptcy proceedings. *See In re Parklane/Atlanta Joint Venture*, 927 F. 2d 532, 538 (11th Cir. 1991). The Court reviews the bankruptcy court's findings of fact for clear error, *see* Fed. R. Bankr. P. 8013; *see also In re Chalik*, 748 F.2d 616, 619

(11th Cir. 1984), while questions of law are reviewed de novo, *see In re Club Assocs.*, 951 F.2d 1223, 1228–29 (11th Cir. 1992).

## ANALYSIS

For the reasons explained below, the Court holds that the strict language of the Florida statute does not apply or control here. Landlord Kane will get no back rent from this estate or Appellant-Tenants for any months the premises was untenantable or uninhabitable due to Landlord's failure under his lease duties.

First, the statute assumes both parties have a good-faith intention to correct an uninhabitable leasehold and pursue the landlord/tenant relationship in normal course. But such good-faith intention seems to be absent on the part of Landlord Kane. At the hearing that produced one of the appealed Orders, Kane convinced everyone that repairs were underway and tenantable premises would be achieved within weeks. Dkt. 21-39 at 22. On the record, however, there has been no successful effort by Landlord Kane to repair the premises. The roof has been defective since at least 2018, and the tenancy has been uninhabitable since 2019. Indeed, the condition of the premises has likely worsened during this period of inaction, considering that leaky, uninhabited buildings in subtropical climates frequently rot—especially when the power is cut off.[6] Landlord Kane's actions

---

[6] The record shows that the power was cut off in May 2019 after the original code eviction. Dkt. 21-39 at 24. In February 2020, the electricity on the main, first floor was off, and there had been a been a break-in with items stolen. Ortiz brought pictures to this hearing and stated it looked like a tornado had hit. Dkt. 21-43 at 60–67. Discussion at this hearing suggested, some nine

8

evince no intention of repairing the roof or removing the "red tag." He instead appears to have taken a strategic position of waiting out the Chapter 11 tenants, making no repairs and (based on the appealed Orders) preventing the tenants from accessing the property without a back rent payment of roughly $600,000. This extended inaction defeats the underlying purpose of the Florida statute. As one Circuit Judge noted, the statute is simply an additional remedy to Florida tenants, and "it was not intended to shield a defaulting landlord from the risk of termination of its lease because of its continuing, wilful [sic] default." *Alexander v. A.B. Anks, Inc.*, 840 So. 2d 305, 306–07 (Fla. 5th DCA 2003) (Harris, J., dissenting).

Second, Florida Statute § 83.201 was not designed for these circumstances. The statute is a self-help mechanism to permit a tenant—extrajudicially and without need for a court filing—to protect himself yet incent prompt landlord repairs if the premises are uninhabitable. *See generally Vance Realty Grp., Inc. v. Park Place at Metrowest*, 909 So. 2d 516, 518 n.2 (Fla. 5th DCA 2005). In contrast, the parties here have been under close and ongoing supervision by the bankruptcy court. Both the payment of rent and cessation of same was the subject of litigated orders and several hearings. The quick extrajudicial remedy afforded by this statute has failed.

---

months after the City eviction, that the Landlord still had work to do on the premises although the Landlord stated it had a new roof. *Id.* at 97–98.

Strict application of the statute here would also create an unjustified windfall to the Landlord. Although the tenants would have other remedies, the Florida statute requires the tenants to pay the back rent to gain reentry. *See* Fla. Stat. § 83.201 ("Once the landlord has completed the repair or maintenance, the tenant *shall* pay the landlord the amounts of rent withheld.") (emphasis added). This means the Landlord would receive roughly $600,000 in back rent despite providing neither "quiet enjoyment" of the premises nor any property access whatsoever. Bankruptcy is a court of equity; the Court need not apply results that are absurd or create unjustified windfalls. Moreover, the goal of Chapter 11 bankruptcy is to fairly manage and reorder the debtor's affairs to permit a just and efficient reorganization. Bald application of the Florida statute here would drain the estate of funds despite the estate receiving no benefit or consideration whatsoever. The Court rejects such inequitable results.

Finally, application of the Florida statute here is wasteful, especially to the estate. Under the present situation, the tenants must pay about $600,000 to reenter the premises. They would then likely sue in state court (at more time and more expense) for some sort of damages to recoup the money from Landlord Kane. This would require extra litigation and a new lawsuit in an already over-litigated dispute. Moreover, if the Landlord ever actually repairs the building, there is little doubt he will demand full multi-year back rent before opening the property to the

10

estate tenant. The statute in this instance effectively creates a further block to the quick and inexpensive resolution of the estate's affairs, something inimical to the overriding goal of bankruptcy law.

In sum, a strict application of Fla. Stat. § 83.201 to these facts creates several unjustified and absurd results. Indeed, in a lengthy discussion of the impasse nearly two years ago, one can see the Bankruptcy court and the parties wrestling with the poor fit of the statute in this long-term deadlock situation. Dkt. 21-43 at 44–52. The Court described the deadlock as "you can just be in limbo land." *Id.* at 43. The statute would have worked as intended if the Landlord's representations as to prompt repair bore out as accurate. They did not. Thirty months later, the Florida statute is looking more like a stratagem to effect constructive eviction rather than resolve a dispute. Such use of the statute is inappropriate.

## CONCLUSION

The Landlord will get no back rent from this estate or Appellant-Tenants for any months the premises was untenantable or uninhabitable due to Landlord Kane's failure under his lease duties. Accordingly, the Court determines that the subject Orders should be altered, or "blue-penciled," to reflect this holding. The application of the Florida statute is inapt as to any back rent due, for the grounds stated above.

**DONE AND ORDERED** at Tampa, Florida, on December 1, 2021.

/s/ *William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record